SO ORDERED.

Dated: May 4, 2017

Daniel P. Collins, Chief Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>PHOENIX HELIPARTS, INC.,<br><br>Debtor.<br><br>Substantively Consolidated with PHOENIX HELI-SUPPORT, L.L.C., ROBERT REISH<br><br>Plaintiff,<br><br>v.<br><br>PHOENIX HELIPARTS, INC. LIQUIDATION TRUST,<br><br>Defendant.<br>PHOENIX HELIPARTS, INC. LIQUIDATION TRUST,<br><br>Counterclaimant,<br><br>v.<br><br>ROBERT C. REISH and KATHLEEN REISH, husband and wife,<br><br>Counterdefendants.<br>PHOENIX HELIPARTS, INC. LIQUIDATION TRUST,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RYUKO, INC., a Wyoming corporation,<br><br>Third-Party Defendant. | Chapter 11 Proceedings<br><br>Case No. 2:15-bk-12003-DPC<br><br>Adversary No. 2:16-ap-00331-DPC<br><br><br><br>**UNDER ADVISEMENT RULING DENYING THE REISH PARTIES' CROSS MOTION FOR SUMMARY JUDGMENT, AND PARTIALLY GRANTING THE LIQUIDATING TRUST'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>[NOT FOR PUBLICATION] |

1

Before the Court are the Motion for Summary Judgment ("MSJ") filed by the Liquidating Trust and the Cross-Motion for Summary Judgment ("Cross MSJ") filed by the Reish Parties.[1] In summary, the parties contend that the November 25, 2015 transfer of helicopter 41FF to Reish was either a post-petition transfer avoidable under 11 U.S.C. §§ 549 and 550,[2] or an unavoidable sale of a helicopter that belonged to Reish and never became property of the Debtor's bankruptcy estate. The parties also seek summary judgment by this Court on the question of whether a second helicopter, the 229D, was property of the Debtor's bankruptcy estate and is now property of the Liquidating Trust, or whether the 229D helicopter belongs to Reish and never became property of Debtor's bankruptcy estate. Finally, the Liquidating Trust seeks summary judgment by this Court finding that Debtor's pre-petition promise to pay $1,275,000 a year after it borrowed $850,000 is a constructive fraudulent transfer avoidable under § 548.

For the reasons stated below, the Court grants the Liquidating Trust's MSJ declaring 41FF and 229D property of the estate and avoiding the transfer of 41FF to Reish but denying its MSJ as to its § 548 claims. The Court denies the Cross MSJ and dismisses Counts One and Two of Reish's Complaint. The Liquidating Trust is directed to lodge a partial judgment consistent with this order.

**PROCEDURAL BACKGROUND**

1. Phoenix Heliparts, Inc. ("Debtor" or "PHP") filed its voluntary chapter 11 bankruptcy petition on September 18, 2015 ("Petition Date").[3] This bankruptcy filing was precipitated by a January 30, 2015 Arizona Superior Court, Maricopa County ("State Court") under advisement ruling against the Debtor in the amount of $26,051,844.21[4] and the State

---

[1] This is a core matter under 28 U.S.C. § 157. The court has jurisdiction to enter final judgment. *See* the Reish Complaint, ¶ 2; Answer, DE 6 ¶ 1.
[2] Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.
[3] Administrative Docket #1 in case #2:15-bk-12003-DPC ("Admin DE"). Docket entries in this adversary proceeding ("Adversary Proceeding") #2:16-AP-00331-DPC shall be referenced as "DE."
[4] Admin. DE 50-1.

1. Court's subsequent September 8, 2015 minute entry order requiring PHP to post a supersedeas appellate bond in the amount $6,765,260.89.[5]

2. Louie Mukai ("Mukai") was appointed chapter 11 trustee for the Debtor on October 22, 2015.[6]

3. On March 11, 2016, the Debtor was substantively consolidated with Phoenix Heli-Support, L.L.C. ("PHS").[7]

4. On April 1, 2016, the Court entered its order approving the sale of most of the Debtor's assets.[8]

5. On May 31, 2016, the Court entered its order ("Confirmation Order")[9] confirming Mukai's first amended chapter 11 plan ("Plan")[10] of liquidation.

6. The Plan created the Phoenix Heliparts, Inc. Liquidation Trust ("Liquidating Trust") and appointed Mukai to serve as the trustee of the Liquidating Trust. Under the Plan, the Liquidating Trust was vested with all unadministered assets of the Debtor, including the rights to pursue avoidance and turnover actions.[11]

7. On July 1, 2016, Robert Reish ("Reish") commenced this Adversary Proceeding when he filed his complaint ("Complaint")[12] against the Debtor and Mukai. In summary, the Complaint seeks the Court's declaration confirming that Reish owns the 41FF[13] helicopter and that 41FF was never property of the Debtor's bankruptcy estate (Count One). Reish also seeks this Court's judgment confirming that Reish owns the proceeds of sale of 41FF ($2,150,000) to the Azerbaijan Ministry of Defense ("AMOD") (Count Two).

. . .

. . .

---

[5] Admin. DE 50-4.
[6] Admin. DE 104.
[7] Admin. DE 307.
[8] Admin. DE 374.
[9] Admin. DE 482.
[10] Admin. DE 433.
[11] *See* page 15, Section VII of the Plan and the Confirmation Order at page 3. *See also* TSOF (defined in ¶9 below) #37 (DE 23) and RSOF (defined in ¶10 below) #37 (DE 31).
[12] DE 1.
[13] *See* Paragraph 14(a) below.

8. After filing its motion to intervene,[14] on July 26, 2016, the Liquidating Trust filed its answer, counterclaim and third party complaint ("Liquidating Trust Claims").[15] Reish and his wife Kathleen ("Ms. Reish") were named counterdefendants. Ryuko, Inc. ("Ryuko") was the named third-party defendant. In summary, the Liquidating Trust Claims seek (a) avoidance under § 549 of the post-petition transfer of 41FF to Reish (First Claim), (b) recovery under § 550 from Reish of the amount AMOD contracted with Reish for AMOD's purchase of 41FF (namely $2,322,000) (Second Claim) and (c) for a determination that the Liquidating Trust, not Reish, owns 229D (Third Claim). In its Third Party Complaint against Ryuko, the Liquidating Trust seeks to avoid a portion of the Ryuko Note[16] as a fraudulent transfer under § 548.

9. On December 8, 2016, the Liquidating Trust filed its MSJ[17] and Liquidating Trust's Statement of Facts ("TSOF").[18]

10. On January 17, 2017, Reish, Ms. Reish and Ryuko (the "Reish Parties") filed their opposition to the MSJ, their Cross MSJ,[19] and the Reish Parties' Statement of Facts ("RSOF").[20]

11. On January 31, 2017, the Liquidating Trust filed its reply to the opposition to the MSJ and its opposition to the Cross MSJ[21] and its reply to the RSOF ("Reply to RSOF").[22]

12. Mukai's affidavit ("Mukai Affidavit #2") was filed on February 13, 2017 as a supplement to both the Liquidating Trust's MSJ and its response to the Cross MSJ.[23]

13. The Court heard oral argument on the MSJ and Cross MSJ on February 16, 2017, and then took this matter under advisement.

. . .

. . .

. . .

---

[14] DE 5.
[15] DE 6.
[16] *See* ¶ 15 below.
[17] DE 22.
[18] DE 23.
[19] DE 30.
[20] DE 31.
[21] DE 33.
[22] DE 34.
[23] DE 36.

4

Case 2:16-ap-00331-DPC    Doc 42    Filed 05/04/17    Entered 05/04/17 12:58:33    Desc
Main Document    Page 4 of 19

**FACTS**

The facts material to this Court's disposition of the MSJ and Cross MSJ are not in dispute. The interpretation of a number of these facts, however, is hotly contested.

The Helicopter Transactions

14. Two helicopters and a promissory note are at the heart of the controversy between these parties. A third helicopter, described as serial number 0175FF (the "175FF"), was tangentially involved in transactions involving PHP and Reish. The transactions involving these three helicopters are as follows:

(a). 175FF: This helicopter was owned by Ryuko, repaired by PHP at Ryuko's request and, with the help of Tina Cannon ("Cannon"), former president of PHP, was contracted for sale by Ryuko to AMOD on November 11, 2015 for $2,538,000.[24] This sale closed on November 25, 2015. $2,350,000 was paid by AMOD to Ryuko through an escrow handled by Insured Aircraft Title Service, Inc. ("IATS").[25]

(b). 41FF: A helicopter described as model number MD 530F, registration and serial number 0041FF (the "41FF") was owned by Utility Aviation, Inc. who transferred 41FF to XL Specialty Ins. Co. who transferred 41FF to RotorMate USA who, in turn, sold 41FF to PHP in 2009.[26] At some point along the way, probably when 41FF was owned by Utility Aviation, Inc., 41FF was encumbered by a lien in favor of Wells Fargo Bank.

On February 13, 2014, PHP entered into a helicopter purchase agreement ("41FF Agreement")[27] calling for PHP's sale of 41FF to Reish for a total price "TBD" (i.e. to be determined). The base purchase price was $1,395,000. A $500,000 deposit was made by Reish to PHP on April 25, 2014.[28] Since the helicopter had been in an accident,[29] PHP needed to make significant repairs before it could deliver the 41FF to Reish ". . . with all systems operational, a Credit Airworthiness Certificate, Flight records up to date, all mandatory Airworthiness

---

[24] DE 23-7. TSOF 26, exhibit 7 pages 1-3 of 6.
[25] DE 23-12. TSOF 26, exhibit 12, page 2.
[26] DEs 23 and 31. TSOF 30. RSOF 30, RSOF 43, attachment 43 (DE 31-5).
[27] DE 23-1.
[28] DE 23-1.
[29] DE 23. TSOF 7 and exhibit 2 40:18-42:3 and 63:18-66:16.

5

Directives and Service Bulletins complied with."[30] Delivery of 41FF to Reish by PHP was projected to be 7 months after the Reish deposit and after the parties agreed upon the scope of work.[31] No evidence was submitted to the Court indicating the parties to the 41FF Agreement ever agreed upon a final scope of repairs or final sale price. The 41FF Agreement contains a provision indicating its terms may not be changed unless executed by the parties. The Court received no evidence that the parties executed any such changes to the 41FF Agreement. The Court received no evidence suggesting the 41FF Agreement was ever amended. Reish contends he wished to purchase 41FF for personal and/or family and consumer purposes.[32] The Liquidating Trust contends Reisch intended to purchase 41FF for commercial purposes.[33]

The Liquidating Trust and Reish Parties both agree that, by March 26, 2015, Reish had delivered to PHP the total sum of $1,220,000 towards Reish's purchase of 41FF.[34] Additionally, Reish contends he issued "offset credits"[35] totaling $175,000 to PHP to complete Reish's payments towards the purchase of 41FF.[36] No evidence was presented to this Court indicating how or when Reish issued such "offset credits." Further, the books and records of PHP do not reflect the application of any offsets towards Reish's purchase of 41FF or a $175,000 reduction of PHP's obligations on the Ryuko Note.[37]

PHP failed to make any meaningful progress towards the significant repairs required to render 41FF airworthy.[38] To this date, 41FF is a helicopter shell and cannot be flown, much less flown in a condition meeting federal aviation legal requirements. 41FF remains in the possession of the Liquidating Trust.[39]

Since PHP and RotorMate failed to properly document PHP's 2009 purchase of 41FF, Cannon arranged for title to 41FF to finally be transferred on October 18, 2015 to PHP from

---

[30] DE 23-1. TSOF exhibit 1, ¶4 of the 41FF Agreement.
[31] DE 23-1. TSOF exhibit 1, ¶9 of the 41FF Agreement.
[32] DE 31. RSOF 45 and DE 31-10, Reish Declaration page 2.
[33] DE 34. Liquidating Trust's reply to RSOF ("TRSOF"), ¶ 45 and Reish's POC 37. *See* page 9 below.
[34] DE 23. TSOF § 10 and RSOF § 10.
[35] The Reish Parties use the words credit and setoff interchangeably
[36] DE 31-10. Reish Declaration, page 2.
[37] DE 36. Mukai Affidavit#2 ¶ 8. *See also* DE 23, TSOF 18 and exhibit 2 at 140:12-141:3.
[38] DE 23. TSOF 8 and exhibit 2 at 145:5-2 and exhibit 13, Mukai's affidavit ("Mukai Affidavit #1") ¶ 4.
[39] Oral argument on February 16, 2017 at 11:03:20.

RotorMate and for the Wells Fargo lien release to be processed.[40] Once title to 41FF was transferred to PHP and the Wells Fargo lien released, Cannon orchestrated the transfer of title from PHP to Reisch. She also facilitated the 41FF transfer from Reisch to AMOD for $2,150,000.[41] [42] Those funds were paid to Reisch via the IATS escrow by AMOD on November 25, 2015.[43] These transactions were handled by Cannon without approval of this Court and after Mukai was appointed PHP's trustee.[44] Mukai did not authorize Cannon to execute any bills of sale and did not authorize her to execute any bills of sale for 41FF.[45]

(c). 229D: A helicopter described as model number MD369D, registration and serial number 1170229D (the "229D") is the subject of a February 19, 2014 helicopter purchase agreement ("229D Agreement")[46] between Reish and PHP. Unlike the 41FF Agreement, the purchase price for the 229D was not "TBD" but, rather, was set at $975,000. The Liquidating Trust and the Reish Parties agree that, by March 26, 2015, Reish had paid $875,000 to PHP towards Reisch's purchase of 229D.[47] Additionally, Reish contends he provided "offset credits" totaling $100,000 to complete Reish's payment towards his purchase of 229D.[48] No evidence was presented to this Court indicating how or when Reish issued such "offset credits." Further, the books and records of PHP do not reflect the application of any offsets towards Reish's purchase of 229D or a $100,000 reduction of PHP's obligations on the Ryuko Note.[49] The Reish Parties acknowledge that Reish intended to purchase 229D for commercial purposes.[50]

---

[40] DE 23. TSOF 30 and 31, exhibit 11 (aircraft bill of sale).
[41] DE 23. TSOF 31 and 33, exhibits 11 and 12 (bills of sale and bank wire confirmation).
[42] As noted in ¶ 8 above, the contract between AMOD and Reish called for payment of $2,322,000. *See* DE 23, exhibit 7, pages 4-6. No evidence was submitted to the Court indicating why AMOD transferred only $2,150,000 to Reish at the closing of this sale or whether other funds were also sent by AMOD to fully pay the contracted price for 41FF.
[43] The 41FF and the 175FF sales closed at the same time through the same escrow company, IATS. As noted, AMOD was the purchaser of both helicopters and Cannon orchestrated both sales.
[44] DE 23. TSOF 31 and DE 36, Mukai Affidavit #2, ¶¶ 4, 5 and 6.
[45] DE 23. TSOF 31 and DE 36, Mukai Affidavit #2, ¶ 4.
[46] DE 23-3.
[47] DE 23. TSOF § 10 and RSOF § 10.
[48] DE 31-10. Reish Declaration, page 2.
[49] DE 36. Mukai Affidavit#2 ¶ 8. *See also* DE 23, TSOF 18 and exhibit 2 at 140:12-141:3.
[50] DE 31-10. Reish Declaration, page 4

7

PHP failed to make any meaningful progress towards the significant repairs required to render 229D airworthy.[51] To this date, 229D is essentially an incomplete helicopter shell and cannot be flown, much less flown in a condition meeting federal aviation legal requirements. 229D remains in the possession of the Liquidating Trust.[52]

15. <u>The Ryuko Note</u>. On April 17, 2015, on behalf of PHP, Cannon executed an installment note ("Ryuko Note") in favor of "Ryuko, Inc., Trustees Robert C. Reish and/or Kathleen A. Reish" calling for payment by PHP of $1,275,000 on or before April 1, 2016. The Ryuko Note indicated "Principle's funds to be credited to Phoenix Heliparts, Inc. to cover the expenses of ongoing and future Ryuko, Inc. projects including, but not limited to, Aircraft S/N 0175FF; S/N 0041FF; and SN 270082D." The Ryuko Note contains a provision stating:

> This Note shall be construed in accordance with the laws of the Sate [sic] of Wyoming. Any alteration, change, or modification of or to this Note, in order to become effective, shall be made by written instrument executed by both Maker and Holder.

The parties provided the Court with no evidence that the Ryuko Note was ever altered or amended.

16. <u>PHP's Insolvency</u>. Due to the $26,051,844.21 judgment against PHP referenced in paragraph 1 above, PHP was insolvent when PHP executed the Ryuko Note on April 17, 2015.[53]

17. <u>The Ryuko Entity</u>. Ryuko is a Wyoming corporation wholly owned by Reish and Ms. Reish. *See* RSOF 41 and ¶41 of the Reply to RSOF. Ryuko is not the alter ego or instrumentality of Reish and no evidence was submitted to this Court which could support a piercing of Ryuko's corporate veil.[54]

18. <u>The Reish Proofs of Claim</u>. On February 16, 2016, Reish and Ms. Reish filed in the PHP bankruptcy case claims numbered 35, 36, 37, 38 and 39. These claims are summarized as follows:

---

[51] DE 31-10. Reish Declaration, page 3.
[52] Oral argument on February 16, 2017 at 11:03:36.
[53] DE 23. TSOF ¶ 15 and RSOF ¶ 15.
[54] *See* the February 16, 2017 oral argument comments by counsel for the Reish Parties at 11:41:42 a.m. and following.

8

(a) <u>Proof of Claim # 35</u> ("POC 35"). POC 35 is an unsecured claim in the amount of $909,372 for "[m]oney loaned on a discount note less credits…" Ryuko is identified as "[o]ther names the creditor used with the debtor." The "person who is completing and signing this claim" is identified as Reish and Ryuko. An attachment to POC 35 states:

> Discount note is attached; $850,000 advanced with repayment to be $1,175,000 on terms stated.
> From the face amount the following credits have been given to PHP:
> <$175,000.00> applied toward purchase of aircraft 0041FF;
> <$100,000.00> applied to purchase of aircraft 0229D;
> <$ 90,628.00> applied on aircraft 041FF
> <$365,628.00> total credits applied
> Note balance due as of the date relief was ordered: $909,372.00**

(b) <u>Proof of Claim # 36</u> ("POC 36"). POC 36 is an unsecured claim in the amount of $2,150,000 for "contingent potential claim of AMOD for refund-re: 041FF helicopter." Ryuko is identified as "[o]ther names the creditor used with the debtor." The "person who is completing and signing this claim" is identified as Reish and Ryuko. An attachment to POC 36 states:

> PHP brokered the sale to AMOD on Nov 11, 2015 without disclosure to buyer that the craft was de-registered by the FAA due to having been wrecked, and manufacturer-only refurbishment needed but was not done, and craft cannot be shipped out of the USA until it is re-registered with FAA, which is presently impossible
>
> AMOD contract sale price $2,150,000 plus modifications they paid PHP to do; This is a contingent claim as AMOD has not yet made a demand for refund; it is not liquidated unless and until such demand is made.

(c) <u>Proof of Claim # 37</u> ("POC 37"). POC 37 is an unsecured claim in the amount of $1,747,733.34 for "[p]urchase refund, parts refund & lost lease income 041FF helicopter." Ryuko is identified as "[o]ther names the creditor used with the debtor." The "person who is completing and signing this claim" is identified as Reish and Ryuko. An attachment to POC 37 states:

> Purchase price of craft never delivered: $1,395,000.00
> Parts paid for and never installed 189,796.36

9

>                   Lost rents: Fair market monthly
>                   Rent exclusive of air time: $12,000.00/mo
>                   per diem: $394.52
>                   Craft purchased 1/22/14; delivery promised 7/22/14
>                   & never delivered
>                   Lost rents between 7/22/14 and relief order date 9/8/14:
>                   413 days x $394.52 = $162,936.98
>                   Total claim: $1,747,733.34**

        (d)    <u>Proof of Claim # 38</u> ("POC 38"). POC 38 is an unsecured claim in the amount of $241,730.12 for "labor overcharge/parts not delivered/lost rents per attachment." Ryuko is identified as "[o]ther names the creditor used with the debtor." The "person who is completing and signing this claim" is identified as Reish and Ryuko. An attachment to POC 38 states:

>                   Purchased from a third party, deal brokered by PHP
>                   PHP was to modify; parts paid for but not delivered $31,201.00
>                   Labor overcharge on work done $27,077.32
>                   $58,272.32
>                   Craft was never completed - delivery promised 6/1/14
>                   Fair market guaranteed monthly rent exclusive of air time: $12,000.00
>                   Per diem: $394.52
>                   Lost income from promised delivery date until relief ordered date of 9/8/15:
>                   465 days x $394.52 = $183,451.80
>                   Claim total: $241,730.12**

        (e)    <u>Proof of Claim # 39</u> ("POC 39). POC 39 is an unsecured claim in the amount of $1,110,513.80 for "[p]urchase refund, parts refund & lost lease income 229D Helicopter." Ryuko is identified as "[o]ther names the creditor used with the debtor." The "person who is completing and signing this claim" is identified as Reish and Ryuko. An attachment to POC 39 states:

>                   Summarized because records supporting this claim are voluminous:
>                   Parts paid for but not installed: $30,455.00
>                   Purchase price paid in full but craft never delivered: $975,000
>                   Lost lease income:
>                   Purchase date: 2/19/2014; delivery promised 8/19/2014 & never delivered;
>                   Lease income for this craft, excluding flight time, is $8,300 per month
>                   or $99,600/yr; $272.88 per diem;
>                   Between promised delivery date (8/19/2014) and date relief ordered
>                   in this case is 385 days; 385 x $272.88 = $105,058.80

10

Total claim: $30,455.00 + $975,000.00 + 105,058.80 = $1,110,513.80**

19. <u>The $360,750 Transfer to PHP</u>. On November 25, 2015, $360,750 was transferred to PHP. These funds apparently came from AMOD in connection with its purchase of 41FF and/or 175FF.[55]

**ANALYSIS**

    I. <u>The § 549 Factors Applied to the 41FF Transactions</u>.

For the Liquidating Trust to prevail on its claim seeking to avoid the transfer of the 41FF under § 549 of the Code, there must have been (1) a transfer, (2) of property of the bankruptcy estate, (3) after the Petition Date, (4) that was not authorized by the Bankruptcy Code or by order of the Court. The parties agree the Liquidating Trust has satisfied three of the four factors required to establish a claim under § 549, namely that there has been (a) a transfer of the 41FF by PHP through the unauthorized actions of its former president, Cannon, (b) made after the Petition Date (and after the date Mukai was appointed chapter 11 trustee) and (3) that transfer was not authorized by the Code or the Court. The sole dispute centers on whether the 41FF was property of the Debtor's bankruptcy estate[56] when it was transferred by PHP to Reish on November 25, 2015. The facts material to this dispute are not in contest. Rather, it is a question of how one interprets these facts.

What constitutes property of a bankruptcy estate is a federal question governed by 11 U.S.C. § 541; however, whether and to what extent a debtor has any legal or equitable interest in the subject property as of the commencement of the bankruptcy case is determined under state law. *In re Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993), citing *Butner v. United States,* 440 U.S. 48, 59 L.Ed.2d 136, 99 S.Ct. 914 (1979), and *In re Jones,* 768 F.2d 923 (7th Cir. 1985). As the 9th Circuit has noted in *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1146 (9th Cir. 2013) :

---

[55] RSOF ¶ 42.
[56] The Liquidating Trust's reply (DE 33) to the Reish opposition to the MSJ suggests ¶ 7 of the Reish Complaint admits the 41FF is property of the Debtor's bankruptcy estate. The Court disagrees.

11

> The Supreme Court has "long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 450, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (internal quotation marks omitted). This principle was given its clearest statement in *Butner,* 440 U.S. 48, 99 S.Ct. 914, which held that because "[p]roperty interests are created and defined by state law," *id.* at 55, 99 S.Ct. 914, "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* This means that "when the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment,'—it is usually referring to a right to payment recognized under state law." *Travelers,* 549 U.S. at 451, 127 S.Ct. 1199 (internal citation omitted).

Before looking to applicable state law, an important first step in determining whether the 41FF was property of PHP's bankruptcy estate is interpreting the Ryuko Note.

### The Ryuko Note

The Ryuoko Note is owed to Ryuko, not Reish or Ms. Reish. While it is curious that the Ruyuko Note references payment to "Ryuko, Inc., Trustees Robert C. Reisch and/or Kathleen A. Reish, . . . ,"[57] the Ryuko Note's subsequent reference to (a) "Maker" in the singular, (b) to "Principle's" as a singular payee and (c) to "Ryuko, Inc. projects" makes clear that Ryuko is meant to be the sole payee under the Ryuko Note. This, of course, makes sense because the $850,000 transferred to PHP at the time the Ryuko Note was executed was wired to PHP from Ryuko's account at Allied First Bank.[58] Ryuko, and Ryuko alone, is the payee under the Ryuko Note.

### Setoff Credits Concerning the 41FF Agreement

Reish contends that, prior to the Petition Date, he fully satisfied his payment obligations under the 41FF Agreement and, therefore, owned 41FF when PHP filed bankruptcy. The parties agree that, by March 26, 2015, Reish had paid $1,220,000 towards the 41FF Agreement. Reish

---

[57] No evidence was submitted to the Court indicating whether Reish or Ms. Reish were trustees of Ryuko or trustees of some unidentified trust. In any event, it is clear the Reish's were not acting in their individual capacity.
[58] DE 23. TSOF ¶ 11 and exhibit 4 (DE 23-4.)

12

contends the final $175,000 was satisfied when Reish[59] applied "offset credits" to his 41FF purchase price from the amounts owed by PHP under the Ryuko Note.

Arizona law governs the question of whether a payment due under the 41FF Agreement has been properly made by setoff. Although Arizona once recognized that setoffs were a creature of Arizona's common law, when Arizona adopted the Uniform Commercial Code ("UCC"), Article 2 included a provision which states:

> The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price due under the same contract. A.R.S. § 47-2717.

In reviewing this section of the UCC, the Ninth Circuit noted that Arizona's common law of setoffs was displaced by Arizona's adoption of the UCC. In *Amerisourcebergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006), the court noted

> Arizona's Commercial Code provides that "principles of law and equity" apply "unless [displaced] by the particular provisions of this title." Ariz. Rev. Stat. § 47–1103 (2006); *see also John Deere Co. v. First Interstate Bank*, 147 Ariz. 256, 709 P.2d 890, 894 (1985). Although no Arizona court has ruled on whether section 47–2717 preempts a common law claim for setoff, several federal courts have indicated that the corresponding UCC section preempts equitable setoffs. *See ITV Direct*, 379 F.Supp. 2d at 133; *Carlisle Corp. v. Uresco Const. Materials, Inc.*, 823 F.Supp. 271, 275 (E.D. Pa. 1993). As the court convincingly reasoned in *Carlisle*, because the UCC "specifically provides for set-off's in particular circumstances… we must conclude that the Code drafters, and the state legislatures that have adopted the Code, meant to displace common law set-off." *Carlisle*, 823. F.Supp. at 275. It is apparent that the Arizona Legislature intended section 47–217 to supersede the common law of setoff.[60]

*See, In re RCS Capital Dev., LLC*, No. BAP AZ-12-1381, 2013 WL 3618550, at 10 (B.A.P. 9th Cir. July 16, 2013) (holding that for a set-off to be effective under § 553, among other things, the debts setoff must be mutual and that "for mutuality to exist the debts and claims must

---

[59] Even if "Trustees Robert C. Reish and Cathleen A. Reish" were trustees of something other than Ryuko, no evidence was provided by the parties suggesting such trust granted credits to PHP nor could such trust provide offsets as there was no mutuality of parties. *See* discussion below.

[60] The Court is mindful that the Ryuko Note is to be construed in accordance with Wyoming law. Wyoming has adopted Article 2 of the UCC, including 2-717. While the Court could not find a Wyoming or 10th Circuit case coming to the same conclusion as the *Amerisourcebergen* 9th Circuit Panel, this Court concludes Wyoming would do so. Accordingly, it matters not whether Arizona law or Wyoming law controls this issue.

13

be 'in the same right and between the same parties, standing in the same capacity.'(citation omitted)."). As the Reish Parties acknowledged at oral argument, Ryuko is not the alter ego of Reish. A proper setoff could not occur here as there was no mutuality of parties.[61]

Based on the undisputed evidence submitted to this Court, there was not a valid setoff under Arizona or Wyoming law of $175,000 to finish satisfying Reish's price to purchase 41FF. Since Reish had not fully paid Debtor pre-petition for the purchase price called for under the 41FF Agreement, the Debtor, not Reish, owned 41FF on the Petition Date. Since no post-petition payments were made to Debtor under the 41FF Agreement, the 41FF remained property of the Debtor when Cannon orchestrated the November 25, 2015 41FF title transfer to Reish and then brokered the November 25, 2015 transfer of 41FF to AMOD.

<u>Special Property Interest in 41FF Claimed By Reish Parties</u>

The Reish Parties contend that, under Article 2 of Arizona's UCC, they held a special interest in 41FF on the Petition Date and that special interest is superior to the estate's interests. Even if the Reish claimed setoff was properly effectuated and Reish had fully paid the 41FF purchase price prior to the Petition Date, 41FF nevertheless remained property of the Debtor.

Reish claims his full payment of the 41FF purchase price gave him a "special property interest" in 41FF under A.R.S. § 47-2401(1) and that, under § 47-2716(c), Reish has a vested right of replevin against 41FF because he was allegedly purchasing 41FF for his personal and/or family use. Reish argues that such special property interest is superior to the bankruptcy estate's interest in 41FF.

The Reish Parties' special property interest argument presumes 41FF constituted "goods" within the meaning of the UCC. It is only "goods" which can be the subject of a special property interest under A.R.S. § 47-2401. A.R.S. § 47–2501(A) indicates when a buyer obtains a special property interest in goods. That section states:

> The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject

---

[61] Setoff law in both Arizona and Wyoming require mutuality of parties.

14

> them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs:
> 1. When the contract is made if it is for the sale of goods already existing and identified;
> 2. If the contract is for the sale of future goods other than those described in paragraph 3, when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;
> 3. (Not applicable).

However, for property to constitute "goods," A.R.S. § 47-2105(B) requires:

> [g]oods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future" goods. A purported present sale of future goods or any interest therein operates as a contract to sell.

On the Petition Date, 41FF required significant repairs to make it airworthy and for the Debtor to satisfy its obligation under the 41FF Agreement. Debtor had accomplished few if any of the massive repairs required by the 41FF Agreement. At no time pertinent to transactions involving 41FF could that helicopter be considered both "identified" and "existing" within the meaning of A.R.S. § 47-2105(B). Although "goods need not be finished nor ready for delivery in order to be identified to the contract for sale,"[62] to constitute goods the property must also be "existing." The 41FF helicopter shell may have been "identified" but could not be considered "existing" because all the components which needed to be installed into that shell had not and, to this date, have not been installed. 41FF is and remains nothing more than "future goods" within the meaning of § 47-2105(B).

The facts of this case are remarkably similar to those addressed by Bankruptcy Judge Gunby in the case of *In re Carman*, 399 B.R. 599 (Bankr. Md. 2009) where the court found that:

> The good contracted for by Mr. DeChello was a motorboat. The bare 32' hull was not an existing boat. Therefore, it was not a "good". It was not even a nonconforming good; rather, it was a "future good". Mr. DeChello thus did not obtain a special interest in the hull under section 2–501 of Maryland's Commercial Law Code." *Id* at 603.

Since 41FF was not and still is not "goods," Reish never held a special property interest in 41FF. The hypothetical lien of § 544(a) is superior to any interests the Reish Parties could assert against the 41FF. The Court need not determine whether Reish intended to purchase 41FF

---

[62] *See* 2 Hawkland UCC Series § 2-501:1.

for personal or household purposes as such determination would not alter the fact that the 41FF was not "goods" and that the UCC provides no special property interest protections to Reish.[63] Moreover, the Court was supplied with no evidence that Reish waived debtor's performance under the 41FF Agreement[64] or that Reish and PHP ever finally agreed to the scope of repairs or final purchase price under the 41FF Agreement. Under these facts the Court questions whether PHP and Reish had a binding contract. This issue also need not be determined by the Court at this time. The amount of Reish's damages in connection with the 41FF transaction or the correct amount of his claim under POC 37 is not presently before the Court.

Summary—41FF

On the Petition Date, 41FF was property of the Debtor's bankruptcy estate. Reish had not fully satisfied the purchase price nor had the Debtor fully performed its repair obligations under the 41FF Agreement. Reish never waived such performance. PHP's transfer of 41FF to Reish was a post-petition transfer of property of the Debtor's estate not authorized by the Code (as it was a transaction out of the ordinary course of Debtor's business and orchestrated by Cannon (a person without the authority to execute such transfer once Mukai was appointed chapter 11 trustee)), and without this Court's approval. For purposes of § 550, Reish's transfer of 41FF to AMOD on November 25, 2015, for $2,150,000 establishes a minimum value of 41FF on that date.[65] The Liquidating Trust is entitled to summary judgment on its first and second claims for relief. Under the second claim the amount to be awarded under § 550 against Reish is $2,150,000. The Reish Parties Cross MSJ on Counts One and Two of the Reish Complaint are hereby denied and such claims are hereby dismissed with prejudice.

. . .

. . .

---

[63] There is conflicting evidence concerning Reish's intent to purchase the 41FF for personal use. *See* footnote 27 above.

[64] As noted in paragraph 14(b) above, the 41FF Agreement contains a provision requiring any changes be executed by all parties, including changes to the 41FF Agreement requiring work to be performed by PHP. Even if Reish did properly waive performance required of PHP under the 41FF Agreement, the Court doubts the 41FF shell would magically become "goods" under A.R.S. § 47-2105(B).

[65] As noted in ¶ 19 above, $360,750 was transferred to PHP in November 2015. It is not clear to the Court whether these funds have anything to do with AMOD's purchase of 41FF. If so, the 41FF value may exceed the $2,150,000 minimum 41FF value noted in this order.

16

## II. Transactions Involving the 229D

Unlike 41FF, 229D has not been transferred and was always intended by Reish to be used for commercial purposes. As with 41FF, Reish contends he has fully satisfied payment amounts under the 229D Agreement. The parties agree that, by March 26, 2015, Reish paid $875,000 towards his purchase of 229D. Reish contends he issued "offset credits" totaling $100,000 to PHP to complete Reish's payments towards the purchase of 229D. These "offset credits" were allegedly in the form of a reduction of the balances due by Debtor under the Ryuko Note. No evidence was presented to this Court indicating how or when Reish issued such "offset credits." Further, the books and records of PHP do not reflect the application of any offsets towards Reish's purchase of 229D or a $100,000 reduction of PHP's obligations on the Ryuko Note. The Liquidating Trust questions whether Reish provided any notice of his intention to effectuate a set-off. More importantly, however, the Ryuko Note was held by Ryuko, not Reish. Reish, not Ryuko, contracted with the Debtor for the purchase of 229D. To properly effectuate a setoff under Arizona or Wyoming law, there must be mutuality of parties. Mutuality did not exist here and monies owed by the Debtor to Ryuko under the Ryuko Note could not be offset by Reish to pay Reish's obligations to the Debtor under the 229D Agreement. The remainder of this Court's analysis concerning setoffs and special property interests pertinent to 41FF is equally applicable to the 229D analysis. 229D is property of the Liquidating Trust.

## III. § 548(a)(1)(B) Avoidance of All But $850,000 of the Ryuko Note

The Liquidating Trust contends that the unsecured claim associated with the Ryuko Note should be limited to $850,000, the amount Ryuko advanced to PHP under the Ryuko Note. The Liquidating Trust argues that since $1,275,000 was to be paid by PHP to Ryuko within one year of the Ryuko Note, the difference between the loan amount and the required payment amount should be avoided as a fraudulent transfer under § 548.

Under § 548(a)(1)(B), the Liquidating Trust:

> may avoid . . . any obligation . . . incurred by the debtor , that was . . . incurred on or within two years before the filing of the petition, if the debtor voluntarily . . .

17

> (B)(i) received less than a reasonably equivalent value in exchange for such . . . obligation; and
> (ii)(I) was insolvent on the date that such . . . obligation was incurred . . . .

The Ryuko Note obligation was incurred on April 17, 2015, well within two years of the Petition Date. The parties agree the State Court judgment of January 30, 2015 referenced in paragraph 1 above, rendered PHP insolvent.[66] The only question for § 548(a)(1)(B) purposes is whether PHP's promise to pay Ryuko $1,275,000 within one year of an $850,000 loan is an obligation incurred for "less than reasonably equivalent value." Other than the terms of the Ryuko Note, the Liquidating Trust supplies no facts supporting a finding that this obligation was incurred for less than reasonably equivalent value. Ryuko makes a strong argument that the loan repayment amount simply reflects the tax costs incurred by Ryuko when it cashed in investments needed to produce the $850,000 loaned to PHP.[67] But for PHP's agreement to repay $1,275,000 in one year, PHP would not have received the loan proceeds.[68] Under the facts presented, the Court cannot summarily find the Ryuko Note obligation was incurred for less than reasonably equivalent value within the meaning of § 548(a)(1)(B)(i). The Liquidating Trust's MSJ is hereby denied as to the claim contained in the Liquidating Trust's third party complaint against Ryuko.

### The Reish Parties' Constructive Trust Argument

The Reish Parties contend the Debtor acquired title to 41FF by Cannon's post-petition fraud and that, if 41FF became property of the estate, it must be held in constructive trust for Reish. 41FF was property of the Debtor's estate on the Petition Date. It was not Reish's property nor did he have a special interest in 41FF at any time. When Cannon arranged for the post-petition release of the Wells Fargo lien on 41FF and for title to 41FF to finally be placed in Debtor's name, this simply confirmed what should have been confirmed by proper documentation in 2009 when PHP acquired 41FF. These actions alone were not fraudulent nor did they give rise to a constructive trust remedy in favor of Reish against 41FF. Furthermore, the Reish Parties provided the Court with no evidence of post-petition fraud. Neither did the Reish Parties provide evidence that the pre-petition transfers to PHP were embezzled by anyone at PHP. Moreover, the Reish

---

[66] *See* TSOF, ¶ 15 and RSOF, ¶ 15.
[67] DE 31-10, page 1.
[68] Id.

18

Parties cited no legal authority indicating this Court could impose a constructive trust on estate property based on post-petition misconduct. To the extent the Reish Parties' Cross MSJ could be read to seek imposition of a constructive trust against 41FF or 229D, that request is hereby denied.

**CONCLUSION**

Based on the foregoing, the Court hereby grants summary judgment on the Liquidating Trust's Counterclaims against Reish and Ms. Reish in connection with its First Claim for Relief (avoidance of the transfer of 41FF to Reish pursuant to § 549), its Second Claim for Relief (recovery under § 550 of the $2,150,000 value of the avoided 41FF transfer to Reish), and its Third Claim for Relief (determining that 229D is property of the Liquidating Trust, unencumbered by any interests or claim of Reish or Ms. Reish).

As to the Liquidating Trust's MSJ concerning its Third Party Complaint against Ryuko (construction avoidance of all but $850,000 of the Ryuko Note as a fraudulent transfer under § 548(a)(1)(B)), such MSJ is hereby denied.

Finally, the Reish Parties' Cross MSJ is hereby denied. Count One (confirming Reish's ownership of 41FF), and Count Two (confirming Reish's ownership of the proceeds of the 41FF's sale to AMOD) of the Reish Complaint are dismissed with prejudice.

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**

James E. Cross
Cross law Firm, P.L.C.
1850 N. Central Avenue, Suite 1150
Phoenix, Az 85004

H. Lee Horner, Jr.
Goldstein, Horner & Horner, Attorneys, PLLC
5800 Arizona Pavilions Drive, #2665
Cortaro, Arizona 85652